# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## 2014 MSPB 80

Docket No. DA-1221-13-0382-W-1

**Frederick J. Colbert,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

October 16, 2014

R. Bobby Devadoss, Esquire, Dallas, Texas, for the appellant.

Kenneth S. Carroll, Esquire, Dallas, Texas, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1 The appellant has filed a petition for review of an initial decision that dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the following reasons, we GRANT the petition for review. We AFFIRM the administrative judge's finding that the appellant exhausted his administrative remedies with the Office of Special Counsel (OSC). We VACATE the administrative judge's conclusion that the appellant did not make a nonfrivolous allegation of a protected disclosure. We FIND that, even if the appellant made an allegation of a prohibited personnel practice (PPP) under 5 U.S.C. § 2302(b)(9)(A)(i) or (b)(9)(C), the expanded IRA appeal rights in the

Whistleblower Protection Enhancement Act of 2012 (WPEA) do not apply to this case. We FIND instead that the appellant made a nonfrivolous allegation of a protected disclosure pursuant to 5 U.S.C. § 2302(b)(8)(B)(i) and that the disclosure was a contributing factor in the agency's decision to take a personnel action against him. We FURTHER FIND that the appellant's involuntary resignation claim must be analyzed in light of any further evidence and argument on the merits of the appellant's whistleblower reprisal allegations. We therefore REMAND the appeal for further adjudication consistent with this Opinion and Order.

## BACKGROUND

¶2      The appellant, a nurse, averred that he filed a "form 11" complaint with OSC on December 30, 2011, in which he disclosed that "medications were being distributed to veterans in a manner that was [not] in accordance with proper procedure[s] and several patients (i.e., veterans) were given access to areas that [were] not appropriate." Initial Appeal File (IAF), Tab 10 at 5, Tab 23 at 7.[1] He further averred that, in reprisal for this complaint, he "started experiencing retaliation" in the form of car vandalism, patient complaints, a hostile work environment, a July 16, 2012 "minimally satisfactory" evaluation, and a "double bind" proficiency review and summary review notice. IAF, Tab 10 at 5-6, 8, Tab 23 at 7-14. The appellant stated that he filed an OSC complaint on July 24, 2012, documenting such instances of alleged retaliation. *See* IAF, Tab 10 at 6, 8.

---

[1] An OSC Form 11 is a "Complaint of Possible Prohibited Personnel Practice or Other Prohibited Activity," and an OSC Form 12 is a "Disclosure of Information" form. *See OSC Forms*, OSC.GOV, https://osc.gov/Pages/Resources-OSCForms.aspx. The record does not contain a copy of the appellant's December 30, 2011 submission to OSC. Despite his assertion that he filed a "form 11" complaint on that date, he has not alleged in this appeal that he was a victim of reprisal prior to December 30, 2011; rather, this appeal concerns the appellant's claim that the agency retaliated against him as a result of the information he disclosed to OSC on December 30, 2011. *See* IAF, Tab 1 at 6, 9.

On July 26, 2012, the appellant informed the agency that he would resign, effective August 12, 2012.  IAF, Tab 10 at 8; *see* IAF, Tab 14 at 15 (resignation Standard Form 50), 17 (resignation letter).  After the appellant resigned, he filed another OSC reprisal complaint.  IAF, Tab 10 at 8.  OSC informed the appellant on March 7, 2013, that it was closing its investigation.  IAF, Tab 1 at 9 (close out letter in OSC File No. MA-12-4046).  The appellant filed a Board appeal, and he requested a hearing.  IAF, Tab 1.

¶3    The administrative judge issued an initial decision, finding that the appellant exhausted his administrative remedies with OSC but concluding that he failed to make a nonfrivolous allegation of a protected disclosure under 5 U.S.C. § 2302(b)(9)(A)(i).  IAF, Tab 27, Initial Decision (ID) at 2-6.  The administrative judge also found that the appellant failed to make a nonfrivolous allegation that the agency retaliated against him by creating intolerable working conditions that caused his involuntary resignation.  *See* ID at 6-9.  The appellant has filed a petition for review, and the agency has filed a response.  Petition for Review (PFR) File, Tabs 1, 3.  On review, the appellant asserts that the administrative judge incorrectly applied the relevant legal principles and improperly determined that he failed to make a nonfrivolous allegation of a protected disclosure.  PFR File, Tab 1.

## ANALYSIS

¶4    The Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that:  (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action.  *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).

<u>We affirm the administrative judge's decision regarding exhaustion.</u>

¶5    Regarding administrative exhaustion, OSC's close out letter stated that the appellant claimed that he "disclos[ed] violations of law, rule, or regulation at the clinic" in his December 30, 2011 complaint, and that he had "experienced a hostile work environment, an unfavorable proficiency report, and a report of summary board review, all of which [he] believe[d] forced [him] to resign."  IAF, Tab 1 at 9.  The agency did not file a cross petition for review of the initial decision, and we affirm the administrative judge's decision on administrative exhaustion with OSC, which is supported by the record evidence.  ID at 3.

<u>The provisions of the WPEA, authorizing an IRA appeal based on an allegation that a personnel action was taken as a result of a PPP under 5 U.S.C. § 2302(b)(9)(A)(i) or (b)(9)(C), do not apply in this case.</u>

¶6    In analyzing whether the appellant made a nonfrivolous allegation of a protected disclosure, the administrative judge found that, under the Whistleblower Protection Act, reprisal for filing an OSC complaint was considered activity pursuant to 5 U.S.C. § 2302(b)(9) and was not whistleblowing activity pursuant to section 2302(b)(8).  ID at 4.  The administrative judge considered the impact of the WPEA, Pub. L. No. 112-199, 126 Stat. 1465 (2012), which went into effect on December 27, 2012, *see* WPEA § 202, after all of the relevant events in this matter.  She explained that pursuant to section 101(b) of the WPEA, an employee may now seek corrective action in an IRA appeal for any personnel action taken as a result of a PPP described in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  ID at 5-6; *see* 5 U.S.C. § 1221(a).  After finding that section 101 of the WPEA applied to this appeal, the administrative judge determined that the appellant failed to make a nonfrivolous allegation that he engaged in activity protected by 5 U.S.C. § 2302(b)(9)(A)(i).  *See* ID at 5-6. The appellant does not challenge the administrative judge's reliance on 5 U.S.C. § 2302(b)(9)(A)(i) on review, but he disagrees generally with the administrative judge's application of the relevant legal authority.  *See* PFR File, Tab 1 at 7.

¶7    We vacate the administrative judge's analysis of this issue. The administrative judge did not have the benefit of the Board's decision in *Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶¶ 8-15 (2014), wherein the Board declined to give retroactive effect to section 101(b)(1)(A) of the WPEA as it applied to the PPPs described in 5 U.S.C. § 2302(b)(9)(B). We conclude that the expanded IRA appeal rights under the WPEA do not apply to this case for similar reasons. In *Hooker*, 120 M.S.P.R. 629, ¶¶ 11-15, the Board used the analytical framework set forth in *Landsgraf v. USI Film Products*, 511 U.S. 244 (1994), to determine that the retroactive application of the new IRA appeal right in section 101(b)(1)(A), as it pertains to personnel actions taken as a result of a PPP, as set forth at 5 U.S.C. § 2302(b)(9)(B), would be impermissible because it would increase a party's liability for past conduct as compared to pre-WPEA liability. The same rationale is applicable to the new IRA appeal right pertaining to alleged PPPs as described in 5 U.S.C. § 2302(b)(9)(A)(i) and (b)(9)(C).[2] Indeed, as in *Hooker*, the WPEA created new Board appeal rights in IRA appeals for employees who allege that a personnel action has been taken as a result of PPPs described in section 2302(b)(9)(A)(i) and (b)(9)(C), and it includes a new provision directing the Board to order such corrective action as the Board considers appropriate when such protected activity is a contributing factor in a personnel action. *See Hooker*, 120 M.S.P.R. 629, ¶ 15. Therefore, consistent with *Hooker*, we decline to apply the new IRA appeal right in section 101(b)(1)(A) of the WPEA as it pertains to the PPPs described at 5 U.S.C.

---

[2] Because we find that the WPEA's new IRA appeal rights are not available to the appellant concerning the pre-WPEA events in this appeal, we do not need to resolve whether he made a nonfrivolous allegation that his activity constitutes a complaint "with regard to remedying a violation of [5 U.S.C. § 2302(b)(8)]," as described in 5 U.S.C. § 2302(b)(9)(A)(i), or "disclosing information to . . . the Special Counsel, in accordance with applicable provisions of law," as described in 5 U.S.C. § 2302(b)(9)(C). *See Hooker*, 120 M.S.P.R. 629, ¶¶ 9-10.

§ 2302(b)(9)(A)(i) and (b)(9)(C) because doing so would increase a party's liability for past conduct as compared to pre-WPEA liability. *See id.*

The appellant made a nonfrivolous allegation that his December 2011 complaint to OSC was protected by 5 U.S.C. § 2302(b)(8)(B)(i).

¶8    Although the appellant cannot bring an IRA appeal based on the WPEA amendments as set forth above, his December 2011 OSC complaint should have been considered under 5 U.S.C. § 2302(b)(8)(B)(i).  Prior to the enactment of the WPEA, that section stated, in pertinent part, that it is a PPP to take or fail to take, or threaten to take or fail to take, a personnel action concerning any employee "because of . . . any disclosure to the Special Counsel" of information that the employee reasonably believes evidences "a violation of any law, rule, or regulation."   5 U.S.C. § 2302(b)(8)(B)(i) (2011); *Weed v. Social Security Administration*, 113 M.S.P.R. 221, ¶ 9 (2010).[3]  OSC's close out letter, coupled with the appellant's statement in his affidavit that he disclosed medication administration improprieties and that veterans were given unauthorized access to certain parts of the medical facility, constitute a nonfrivolous allegation that he reasonably believed that he disclosed a violation of a law, rule, or regulation to OSC in December 2011.   We therefore find that the appellant made a nonfrivolous allegation of a protected disclosure.

The appellant made a nonfrivolous allegation that his December 2011 OSC complaint was a contributing factor in the agency's decision to take a personnel action against him.

¶9    Having determined that the appellant made a nonfrivolous allegation that his December 2011 complaint to OSC constitutes a protected disclosure pursuant to 5 U.S.C. § 2302(b)(8)(B)(i), we also conclude that the appellant nonfrivolously

---

[3] The only change that the WPEA made to 5 U.S.C. § 2302(b)(8)(B)(i) is that it struck "a violation" and inserted "any violation (other than a violation of this section)." WPEA § 101(a)(2).  We have considered this amendment and find that it does not change the result in this case. *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 n.3 (2013).

alleged that this complaint was a contributing factor in a personnel action taken against him. One way to establish the contributing factor criterion is through the knowledge-timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Mudd*, 120 M.S.P.R. 365, ¶ 10.

¶10    Regarding the "knowledge" component, the appellant averred that he "notified management" of his December 30, 2011 OSC complaint. IAF, Tab 10 at 5. Although the appellant does not clearly identify any individuals whom he would consider "management," he averred that he informed V.B., his "nursing supervisor," that he intended to contact OSC in December 2011, and V.B.'s input was used in his performance evaluation. IAF, Tab 23 at 7, 10-11. He also identified L.G. as his "supervisor" and "manager," and it appears that L.G. requested a summary review board. *See* IAF, Tab 10 at 5-6, Tab 14 at 19, Tab 23 at 8. We find that these assertions satisfy the "knowledge" component of the knowledge-timing test. *See Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶¶ 9-12 (2014) (the appellant's assertion, that the supervisors who suspended him knew that he engaged in representational activities because "they were apprised of [his] everyday activities," "were intensely scrutinizing him," and "granted [him] official time to engage in the representational activities," constitutes a nonfrivolous allegation that his activity was a contributing factor in his suspensions); *see also Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (an allegation of knowledge or constructive knowledge is "minimally sufficient" to meet the burden of a nonfrivolous allegation).

¶11    The Board has held that personnel actions that were alleged to have begun within 1 year of the disclosures satisfy the "timing" component of the

knowledge-timing test. *See Mudd*, 120 M.S.P.R. 365, ¶ 10. The "timing" component is satisfied here because all of the alleged personnel actions, including the appellant's resignation, occurred within 8 months of his December 2011 OSC complaint. *See, e.g.*, IAF, Tab 14 at 15, 17.

¶12    We further find that the appellant has identified several potentially retaliatory personnel actions under 5 U.S.C. § 2302(a)(2)(A). The appellant alleged that there was a hostile work environment and OSC referenced an "unfavorable proficiency report" and a "report of summary board review," which we understand to mean the appellant's July 16, 2012 "minimally satisfactory" performance evaluation and his supervisor's request for a summary review board, respectively. *See* IAF, Tab 1 at 9, Tab 14 at 19, Tab 23 at 10-11. A performance evaluation is a personnel action identified in 5 U.S.C. § 2302(a)(2)(A)(viii), and the request for a summary review board could be a personnel action, as it could be "a decision concerning pay, benefits, or awards" or "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(ix), (xii).[4] The Board also has held that, if an appellant can prove by preponderant evidence that his resignation was involuntary, the Board may have IRA jurisdiction over the resignation as a personnel action under 5 U.S.C. § 2302(a)(2)(A). *Koury v. Department of Defense*, 84 M.S.P.R. 219, ¶ 10 (1999).[5]

---

[4] For the sake of convenience, we are citing to the current version of 5 U.S.C. § 2302(a)(2)(A). However, at the time of the incidents in question, the relevant subsections were 5 U.S.C. § 2302(a)(2)(A)(ix), (xi) (2011). *See* WPEA § 104. The renumbering is immaterial to our decision in this matter.

[5] In *Covarrubias v. Social Security Administration*, 113 M.S.P.R. 583, ¶ 9 n.2 (2010), the Board indicated that, because an involuntary retirement was equivalent to a removal, which is an "otherwise appealable action," it was outside the scope of an IRA appeal. In so concluding, the Board relied on *Massimino v. Department of Veterans Affairs*, 58 M.S.P.R. 318 (1993), which we have recognized was abrogated by 5 U.S.C. § 7121(g). *See Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 18 (2013). Accordingly, to the extent that *Covarrubias* conflicts with our decision that an

## The appellant's involuntary resignation claim should be remanded for further adjudication.

¶13     The administrative judge determined below that the appellant failed to make a nonfrivolous allegation that he was subjected to a personnel action in the form of a forced resignation in reprisal for protected whistleblowing activity. *See* ID at 9. As noted above, the administrative judge arrived at this conclusion after finding, incorrectly, that the appellant failed to make a nonfrivolous allegation of a protected disclosure. *See* ID at 4-6. In light of our decision to vacate the administrative judge's analysis in this regard, and our conclusion regarding the contributing factor criterion, we also vacate the administrative judge's analysis of the involuntary resignation claim, and we remand this claim for further adjudication. *See Diefenderfer v. Department of Transportation*, 108 M.S.P.R. 651, ¶¶ 35-37 (2008) (explaining that, because the Board was remanding the appeal for further consideration of some of the appellant's reprisal claims, and because these claims were intertwined with her claim that her resignation was involuntary, further consideration of the latter claim was appropriate). The administrative judge shall reconsider her findings concerning the involuntary resignation claim in light of any further evidence and argument introduced on remand, and she shall make new findings concerning the appellant's claim in this regard. *See id.*, ¶ 37.

---

involuntary resignation claim is cognizable in an IRA appeal, it is hereby OVERRULED.

## <u>ORDER</u>

¶14      We REMAND the appeal to the Denver Field Office for further adjudication consistent with this Opinion and Order.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.