NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT MICHAEL MILLER,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**FEDERAL DEPOSIT INSURANCE CORPORATION,**
*Intervenor*

---

2015-3054

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-13-0574-W-2.

---

Decided: August 6, 2015

---

ROBERT MICHAEL MILLER, Fairfax, VA, pro se.

STEPHEN FUNG, Office of the General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent. Also represented by BRYAN G. POLISUK.

ERIN MURDOCK-PARK, Commercial Litigation Branch, Civil Division, United States Department of Justice,

Washington, DC, for intervenor. Also represented by
BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ALLISON
KIDD-MILLER.

---

Before PROST, *Chief Judge,* NEWMAN, and O'MALLEY,
*Circuit Judges.*

PER CURIAM.

Robert M. Miller appeals the decision of the Merit
System Protection Board ("Board") dismissing his indi-
vidual right of action ("IRA") appeal because Miller failed
to allege that he made a protected disclosure under 5
U.S.C. § 2302(b)(8) (2012), *amended by* Whistleblower
Protection Enhancement Act of 2012 ("WPEA"), Pub. L.
No. 112–199, 126 Stat. 1465. *Miller v. Fed. Deposit Ins.
Co.*, 2014 M.S.P.B. 83 (2014) ("*Board Decision*"). We
*affirm*.

I

A

Miller began his employment with the Federal Depos-
it Insurance Corporation ("FDIC") as an Economic Ana-
lyst with the San Francisco Regional Division of
Insurance and Research on March 10, 2008. In light of
complaints regarding comments Miller allegedly made in
potential violation of the FDIC's anti-harassment policy,
the FDIC issued a Letter of Warning to Miller on May 3,
2011. In light of the Letter of Warning, Miller filed a Step
1 grievance, titled "Grievance of Matters Relating to
Terms of Employment, Breach of Agreement, and Viola-
tions of Law and Policy," in accordance with the
FDIC/NTEU Term Collective Bargaining Agreement. In
the Step 1 grievance, filed on May 29, 2011, Miller alleged
a variety of errors in the investigation of his allegedly
harassing comments, including, *inter alia*, that: (1) the
investigation was not performed by an impartial investi-

gator; (2) he was not sufficiently notified of his rights under FDIC regulations; (3) the allegations lacked sufficient detail; (4) the allegations did not constitute harassment; (5) the FDIC did not conduct adequate harassment training; and (6) the FDIC's harassment policy was inadequate. Miller claimed that the investigation into his comments, and the Letter of Warning, caused adverse employment actions, including, *inter alia*: (1) failure to perform a desk audit for a promotion, (2) failure to promote Miller; (3) failure to publish papers by Miller; (4) exclusion of Miller from opportunities for experience and advancement; and (5) a low performance evaluation. Miller requested, as one form of relief, to be a member of a working group to revise the FDIC's sexual harassment policy, procedures, and training, due to Miller's prior experience developing sexual harassment procedures for the United States Army and Army ROTC.[1] The FDIC denied his Step 1 grievance on July 14, 2011.

Miller filed a Step 2 grievance on July 22, 2011, again alleging that the FDIC erred on multiple grounds in issuing the Letter of Warning. Miller reiterated his arguments that the FDIC lacked a sufficient anti-harassment policy, necessary training for avoiding harassment, and appropriate procedures for investigations into complaints of harassment. Miller again requested the opportunity to be part of a working group to improve the FDIC's harassment policy and procedures. The FDIC denied his Step 2 grievance on August 26, 2011, in part because the FDIC claimed that the Letter of Warning was only an informal inquiry, not a disciplinary or adverse action, and did not lead to charges of misconduct. Miller subsequently filed a Step 3 grievance on September 8,

---

[1] Miller also requested an expunging of his record, a promotion with back pay, and restoration of sick leave used in light of the allegations.

2011, alleging the same errors in the FDIC's investigatory process and the same lack of adequate harassment policy or training. Miller claimed that his supervisors had taken further retaliatory action against him, such as decreasing the number of opportunities for Miller to make presentations and cancelling various proposed work details. The FDIC denied his Step 3 grievance.

Miller made two separate disclosures outside of the formal grievance process. On May 26, 2011, Miller contacted the FDIC Internal Ombudsman with his concerns about FDIC procedures and policies. Miller claimed that the "FDIC violated the law, several United States Equal Employment Opportunity Commission [("EEOC")] Compliance Guidelines, and many of its own policies and procedures," and that the final decision in his case was "based on a faulty understanding of the law and policies." Resp't's App'x ("R.A.") 122. The Ombudsman referred Miller to an EEOC Counselor to discuss any allegations of discrimination. On February 7, 2012, Miller contacted Acting Chairman Martin J. Gruenberg regarding "FDIC Values, Culture Change, Merit System Principles". R.A. 89–92. After detailing the allegations, the grievance process, and his injuries, Miller contended that the investigation process was inadequate, the FDIC policies for handling harassment complaints were unclear, and members of the FDIC management lied during the investigation. Gruenberg referred Miller to his Chief of Staff, Barbara Ryan, but Ryan took no further action.

B

After completing the grievance process with no resolution, Miller filed a complaint with the Office of Special Counsel ("OSC") on February 17, 2012. Miller alleged that the FDIC retaliated against him due to whistleblowing disclosures he made during the grievance process, including his statements that the FDIC procedures and policies regarding harassment were inadequate. In

particular, Miller claimed that he informed the FDIC that the agency: (1) violated Supreme Court precedent regarding the required manner of conducting sexual harassment investigations; and (2) failed to provide anti-harassment policies that met the minimally-sufficient standards of EEOC guidances. Miller did not mention his communications with Acting Chairman Gruenberg or the Internal Ombudsman. Miller further alleged that the FDIC retaliated by denying his request for a desk audit, withholding a promotion, and denying his request to publish two papers. OSC informed Miller on May 15, 2012, that it had made a preliminary determination not to take action on the complaint because it could not conclude that the FDIC violated 5 U.S.C. § 2302(b)(8). OSC closed its file on his complaint on May 31, 2012, after Miller did not respond to the preliminary determination.

## C

Miller appealed OSC's decision to the Board on June 26, 2012, asserting an IRA based on allegations made to OSC. In light of Congress enacting the WPEA to amend portions of the Whistleblower Protection Act of 1989 ("WPA"), Pub. L. No. 101–12, 103 Stat. 16, the Administrative Judge ("AJ") dismissed Miller's appeal without prejudice pending the Board's resolution of *Hooker v. Department of Veterans Affairs*, 2014 M.S.P.B. 15 (2014). *Miller v. Fed. Deposit Ins. Co.*, No. SF-1221-13-0574-W-1, 2013 MSPB LEXIS 4543 (M.S.P.B. Aug. 27, 2013). The AJ stated that Miller's appeal would be refiled *sua sponte*. *Id.* at *2.

The Board issued its decision in *Hooker* on March 11, 2014, holding that WPEA § 101(b)(1)(A), which expanded the Board's jurisdiction over IRA appeals to include allegations made under 5 U.S.C. § 2302(b)(9)(B), did not apply retroactively. *Hooker*, 2014 M.S.P.B. 15, at ¶¶ 11–15. The Board subsequently refiled Miller's appeal on March 12, 2014, and issued an order to show cause why

the Board had jurisdiction over his appeal. Miller responded on April 14, 2014, explaining that he made disclosures protected under § 2302(b)(8) during the course of the grievance hearings and in his communications with the Internal Ombudsman and Acting Chairman Gruenberg. Miller also asserted that he made nonfrivolous allegations of retaliation due to the FDIC's failure to perform the desk audit or promote him, and the FDIC's decision to issue a below-average performance review.

The AJ issued an Initial Decision on June 6, 2014, dismissing Miller's appeal for lack of jurisdiction. *Miller v. Fed. Deposit Ins. Co.*, No. SF-1221-13-0574-W-2, 2014 MSPB Lexis 3565 (M.S.P.B. June 6, 2014). The AJ first addressed the disclosures to the Internal Ombudsman and Acting Chairman Gruenberg. *Id.* at *7–8. The AJ found that Miller did not identify these disclosures in his OSC complaint and did not establish that he raised these disclosures with OSC at any time during their review. *Id.* at *7. The AJ thus concluded that Miller failed to exhaust his remedies with the OSC regarding these disclosures. *Id.* at *8.

As for the disclosures made during the grievance process, the AJ first concluded that the alleged reprisal for Miller's allegations made during the grievance process are prohibited under § 2302(b)(9), not § 2302(b)(8). *Id.* at *8–9. The AJ also found that the Board lacked jurisdiction because the FDIC is a government corporation excluded from coverage under § 2302, except for disclosures made under § 2302(b)(8). *Id.* at *9. The AJ then analyzed the effect of the WPEA on the Board's jurisdiction over Miller's claims. *Id.* at *10–13. The AJ explained that retaliation for disclosures made under § 2302(b)(9)(A), as amended by the WPEA, would justify the Board's jurisdiction. *Id.* at *10–12. But, the AJ also found that the Board's retroactivity analysis in *Hooker* should apply equally to § 2302(b)(9)(A)(i), such that the WPEA is not retroactive, and pre-WPEA § 2302(b)(9)(A)(i) did not

justify the Board's jurisdiction. *Id.* at *10–12. Because his disclosures occurred before the effective date of the WPEA, the AJ concluded that the amended WPA did not apply to Miller's disclosures. *Id.* at *12–13. And finally, the AJ found that, even if post-WPEA § 2302(b)(9)(A)(i) applied, the Board would not have jurisdiction because Miller's disclosures did not concern "remedying an alleged violation of subparagraph (b)(8)," as required in § 2302(b)(9)(A)(i). *Id.* at *14.

Miller filed a petition for review of the AJ's decision, but the Board denied the petition in a November 6, 2014, decision. *Board Decision*, at ¶¶ 13, 15. First, the Board declined to address the AJ's analysis regarding exclusion of the FDIC from the purview of § 2302. *Id.* at ¶ 4 n.2. The Board also did not address the AJ's conclusion that, if the WPEA applied to Miller's disclosures, they would still not justify jurisdiction. *Id.* at ¶ 15 n.6. The Board, however, affirmed the AJ's conclusion that Miller failed to exhaust his remedies with OSC regarding the disclosures to the Internal Ombudsman and Acting Chairman Gruenberg. *Id.* at ¶¶ 6–10. The Board found that, even though Miller addressed these disclosures in his response to the AJ's show cause order, he presented no evidence that he informed OSC of these communications. *Id.* at ¶¶ 7–8. Miller claimed that he made reasonable attempts to inform OSC, but OSC had already decided to terminate the investigation regardless of any other disclosures. The Board concluded, however, that Miller's new allegations of protected activity must be presented to OSC before the disclosures could justify the Board's jurisdiction. *Id.* at ¶¶ 9–10.

The Board then decided that Miller's disclosures made during the grievance process should be treated as allegations of prohibited personnel practices under § 2302(b)(9), not § 2302(b)(8), because, according to our decision in *Serrao v. Merit Sys. Prot. Bd.*, 95 F.3d 1569 (Fed. Cir. 1996), disclosures made in the context of a grievance

proceeding are treated as disclosures under § 2302(b)(9). *Board Decision*, at ¶¶ 11–12. Further, the Board concluded that, in light of *Hooker*, the WPEA-enabled broadening of the Board's jurisdiction to include IRA's predicated on disclosures protected by § 2302(b)(9) did not apply retroactively. *Id.* at ¶ 15. The Board thus affirmed the AJ's dismissal of Miller's appeal because his allegations, protected only under § 2302(b)(9), did not justify Board jurisdiction under the pre-WPEA statute. *Id.* at ¶ 13.

Miller filed a timely Notice of Appeal on January 5, 2015, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II

The scope of our review of a Board decision is limited. We can set aside a Board decision only if it was: (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (2) "obtained without procedures required by law, rule, or regulation having been followed"; or (3) "unsupported by substantial evidence." 5 U.S.C. § 7703(c). The Board's jurisdiction is not plenary, but is limited by statute. 5 U.S.C. § 7701(a)(1). The petitioner has the burden of establishing the Board's jurisdiction by a preponderance of the evidence. *Serrao*, 95 F.3d at 1573 (citing 5 C.F.R. § 1201.56(a)(2)). The Board's jurisdiction is a question of law that we review *de novo*. *Serrao*, 95 F.3d at 1573.

## A

An aggrieved employee can invoke the Board's jurisdiction through filing an IRA under 5 U.S.C. § 1214. Under the pre-WPEA § 1214, "[a]n employee . . . may seek corrective action from the Board under section 1221, if such employee . . . seeks corrective action for a prohibited personnel practice described in section 2302(b)(8) from the Special Counsel" and meets certain procedural requirements. *Id.* § 1214(a)(3) (2012) *amended by* Whistleblower

Protection Enhancement Act of 2012, Pub. L. No. 112–199, 126 Stat. 1465. Section 1214 thus requires an employee to first seek review from OSC before filing an IRA with the Board, unless the employee has "the right to appeal directly to the Merit Systems Protection Board." *Id.* Pre-WPEA § 1221 similarly states that an employee may seek corrective action from the Board for "any personnel action taken . . . as a result of a prohibited personnel practice described in section 2302(b)(8)." *Id.* § 1221(a). Thus, prior to amendment of the WPA by the WPEA, Board jurisdiction over an IRA appeal required that the personnel practice at issue be barred by 5 U.S.C. § 2302(b)(8). That subsection provides:

> (b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—
>
> > (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—
> >
> > > (A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—
> > >
> > > > (i) a violation of any law, rule, or regulation, or
> > > >
> > > > (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . ; or
> > >
> > > (B) any disclosure to the Special Counsel, or to the Inspector Gen-

eral of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences—

> (i) a violation of any law, rule, or regulation, or

> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety

*Id.* § 2302. Importantly, pre-WPEA, a disclosure under § 2302(b)(9)(A)(i) could not provide the basis for Board jurisdiction over an IRA:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

> (9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of—

>> (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—

>>> (i) with regard to remedying a violation of paragraph (8);

*Id.* Personnel practices taken against an employee because of their exercise of grievance rights thus did not give rise to any IRA rights.[2]

The WPEA amended Title 5 with regards to the Board's jurisdiction and IRA appeals. Section 1214(a)(3) now expands the Board's jurisdiction to include "if such employee . . . seeks corrective action for a prohibited personnel practice described in section 2302(b)(8) *or section 2302(b)(9)(A)(i), (B), (C), or (D)* from the Special Counsel . . . ." 5 U.S.C. § 1214(a)(3) (emphasis added). Section 1221(a) has also been expanded to include "prohibited personnel practice[s] described in . . . section 2302(b)(9)(A)(i), (B), (C), or (D)." The WPEA did not, however, amend § 2302(b)(8) or § 2302(b)(9)(A)(i) as relevant to Miller's appeal. Under the WPEA, in contrast to the WPA, an employee may file an IRA, and the Board will have jurisdiction over the appeal, if the prohibited personnel action is due to a disclosure covered by *either* § 2302(b)(8)—i.e. retaliation for whistleblowing—or § 2302(b)(9)(A)(i)—i.e. retaliation for exercising a grievance right related to whistleblowing.

The Board found that § 101(b)(1)(A) of the WPEA, which amended 5 U.S.C. §§ 1214(a), 1221(a)(3), did not apply retroactively in light of its analysis in *Hooker*. *Board Decision*, at ¶ 15. Importantly, Miller does not challenge the Board's retroactivity analysis. He instead argues that the statements he made during the grievance process are disclosures protected under § 2302(b)(8), not § 2302(b)(9)(A)(i), under the pre-WPEA statute. Because

---

[2] Under Pre-WPEA § 1221(e)(1), the Board "shall order such corrective action as the Board considers appropriate" if the employee demonstrates that "a disclosure described under section 2302(b)(8) was a contributing factor in the personnel action which was taken or is to be taken against such employee." *Id.* § 1221(e)(1).

Miller does not challenge the Board's retroactivity analysis, and because neither party briefed the issue, we assume for the purposes of our analysis that WPEA § 101(b)(1)(A) is not retroactive, and do not comment on the Board's analysis below or in *Hooker*.[3]

B

After Miller received the Letter of Warning, he made two sets of disclosures: (1) the statements made to the Internal Ombudsman and to Acting Chairman Gruenberg by email outside of the grievance process; and (2) the statements made in his Step 1–3 complaints to FDIC officials, and in his OSC complaint. We analyze these disclosures *in seriatim*.

1

In a series of emails in 2011 and 2012, Miller expressed his concerns with the FDIC's harassment policies to the Internal Ombudsman and Acting Chairman Gruenberg. Miller contended that the FDIC's policies and training for harassment complaints were inadequate, and that certain members of FDIC management lied during his investigation. As the Board recognized, Miller did not mention these conversations in any of his Step 1–3 grievance filings or hearings, and did not discuss the disclosures in his OSC complaint. *Board Decision* ¶¶ 8–9. On appeal, Miller does not claim that he informed OSC of these disclosures, but instead argues that he would have told OSC of these disclosures had OSC reasonably explained the exhaustion requirement. Miller also argues that OSC would have closed his file even if he *had includ-*

---

[3] We also do not comment on the Board's analysis in *Colbert v. Department of Veterans Affairs*, 2014 M.S.P.B. 80, ¶ 7 (2015) (finding that the WPEA did not apply retroactively to § 2302(b)(9)(A)(i) or § 2302(b)(9)(C)).

*ed* a discussion of the disclosures to the Internal Ombudsman and Acting Chairman Gruenberg, because the OSC appeared uninterested in his complaint. The government responds that exhaustion is mandated by statute, and his status as a pro se filer does not excuse his failure to meet statutory requirements. The government also argues that OSC met its obligation to "investigate the allegation to the extent necessary" by reviewing Miller's filings, even if it did not interview Miller. 5 U.S.C. § 1214(a)(1)(A). We agree with the government's arguments.

Section 1214(a)(3) requires that an employee first seek corrective action from OSC before filing an IRA appeal with the Board. In determining if the employee sufficiently exhausted his remedies, we look to "the complaint to OSC requesting corrective action under 5 U.S.C. § 1214(a)(3), not the employee's subsequent characterization of that statement in his appeal to the Board." *Serrao*, 95 F.3d at 1577 (citing *Ward v. Merit Sys. Prot. Bd.*, 981 F.2d 521, 526 (Fed. Cir. 1992)). We require that the employee "articulate with reasonable clarity and precision [before OSC] the basis for his request for corrective action under the WPA" to allow OSC to effectively pursue an investigation. *Id.* (quoting *Ellison v. Merit Sys. Prot. Bd.*, 7 F.3d 1031, 1037 (Fed. Cir. 1993)); *see also Knollenberg v. Merit Sys. Prot. Bd.*, 953 F.2d 623, 626 (Fed. Cir. 1992) (requiring the petitioner to provide OSC with, at least, a "sufficient basis to pursue an investigation which might have led to corrective action"). An employee may include further detail regarding his allegations before the Board, but a reasonably clear claim must first be made to OSC. *Briley v. Nat'l Archives & Records Admin.*, 236 F.3d 1373, 1378 (Fed. Cir. 2001). The Board's jurisdiction over an IRA appeal, assuming the employee does not have an independent right to appeal directly to the Board, is thus limited to those issues that have been previously raised with OSC. *Ellison*, 7 F.3d at 1036–37. Miller "bears the

burden of showing that [he] sought corrective action from the OSC and that [he] exhausted [his] remedies there." *Briley*, 236 F.3d at 1377.

Miller did not raise his communication with the Internal Ombudsman or Acting Chairman Gruenberg in his complaint to OSC. The statute does not require that OSC affirmatively inform Miller that he must include any disclosures made, even those made outside the grievance process, in his OSC complaint in order to exhaust remedies. *Cf. Willis v. Dep't of Agric.*, 141 F.3d 1139, 1143 (Fed. Cir. 1998) (explaining that OSC is merely required to 'investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken'" (citing 5 U.S.C. § 1214(a)(3)). Our precedent makes clear that § 1214(a)(3) requires, at a minimum, that the complaint before the OSC include some claim, "articulate[d] with reasonable clarity and precision," that identifies the basis for the employee's whistleblowing allegations. *Ellison*, 7 F.3d at 1037. Miller failed to raise these two disclosures before OSC in any capacity, and it is mere speculation for Miller to claim that raising the disclosures would have been irrelevant to OSC's decision to close his file. We therefore affirm the Board's conclusion that Miller failed to exhaust his remedies before OSC for his disclosures to the Internal Ombudsman and Acting Chairman Gruenberg.

2

Miller's other disclosures occurred during the grievance process established under the FDIC/NTEU Term Collective Bargaining Agreement. Similar to the disclosures made to the Internal Ombudsman and Acting Chairman Gruenberg, Miller claimed that the FDIC's harassment policies were inadequate, and that the FDIC did not provide appropriate training. Miller also argued that these inadequate policies and trainings were a rea-

son why he received the Letter of Warning, which led to multiple adverse employment actions. The Board concluded that Miller's disclosures made during the grievance process were disclosures under § 2302(b)(9), not § 2302(b)(8), and thus did not support the Board's jurisdiction under the pre-WPEA statute.

Miller argues on appeal that he made two types of disclosures during the grievance process: (1) those disclosures for which he sought personal relief, such as a promotion; and (2) those disclosures for which he sought correction of agency policy and procedure. Miller claims that, although the first set of disclosures do not justify the Board's jurisdiction and are covered by § 2302(b)(9), the second set of disclosures can give rise to an IRA through § 2302(b)(8). Miller further alleges that the content of these disclosures—informing FDIC officials of inadequacies in their training and guidance documents that Miller believes could leave the FDIC open to liability—qualifies as evidence of either "a violation of any law, rule, or regulation", "gross mismanagement", or an "abuse of authority" under § 2302(b)(8). According to Miller, because his disclosure is the type of disclosure that Congress intended § 2302(b)(8) to remedy, the Board should have jurisdiction. The government responds that there is a clear dividing line between the sorts of disclosures discussed under § 2302(b)(8) and § 2302(b)(9). The government argues that, even if a disclosure made during a grievance is the type of disclosure typically covered by § 2302(b)(8), it still must be considered a § 2302(b)(9) disclosure when it is made during a grievance proceeding.

Under the applicable pre-WPEA § 1214(a)(3) and § 1221(a), the Board could potentially have jurisdiction over Miller's disclosures if they fall within § 2302(b)(8), but not § 2302(b)(9). We have drawn a strict line between disclosures under these two provisions. We recognized that Congress "differentiate[d] between reprisal based on disclosure of information and reprisal based upon exercis-

ing a right to complain." *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 690 (Fed. Cir. 1992); *see also Ellison*, 7 F.3d at 1035 (identifying the "deliberate and substantive distinction established by Congress between reprisals based on 'whistleblowing' disclosures of government illegality, waste, and corruption . . . and reprisals based on exercising one's right to complain . . ."). Reading the disclosures covered by § 2302(b)(8) too broadly to include activities under § 2302(b)(9) "would have the effect of reversing this carefully considered Congressional decision . . . render[ing] § 2302(b)(9)(A) largely irrelevant, if not completely superfluous." *Spruill*, 978 F.2d at 691. In *Ellison*, we explained that an employee can make separate disclosures based on the "same operative facts," with some made under § 2302(b)(8), and others under § 2302(b)(9)(A), such that filing a grievance itself does not disqualify an employee from pursuing corrective action through an IRA. 7 F.3d at 1035.

We explained this statutory distinction in detail in *Serrao*. In *Serrao*, the employee claimed that "even assuming his OSC complaint was based upon alleged section 2302(b)(9)(A) reprisal, he nevertheless presented section 2302(b)(8) reprisal claims." 95 F.3d at 1575. We clarified that the issue before the court was "whether the Board has jurisdiction . . . when disclosures allegedly protected under 5 U.S.C. § 2302(b)(8) are made solely in the course of exercising agency grievance rights and are never presented outside that context." *Id.* at 1576. We agreed with the Board's conclusion that "only disclosures made outside grievance procedures or discrimination complaint procedures could serve as the basis for Board jurisdiction over an IRA appeal." *Id.*; *see also Smart v. Merit Sys. Prot. Bd.*, 211 F. App'x 969, 971 (Fed. Cir. 2007) ("Our cases have squarely held that disclosures made solely during grievance proceedings, and not separately disclosed to the agency, cannot form the basis for a whistleblowing claim."). We concluded that allowing an

employee to meet the jurisdictional requirements for an IRA by placing § 2302(b)(8) allegations into a grievance proceeding would "undercut *Spruill*" and "blur" the distinction made by Congress between the types of disclosures covered in these subsections of § 2302. *Serrao*, 95 F.3d at 1576.

Miller presents the same question as in *Serrao*: does the Board have jurisdiction over disclosures allegedly protected under § 2302(b)(8) when those disclosures are made solely during a grievance proceeding? In light of *Serrao*, we conclude that the disclosures Miller made during his grievance proceeding are protected under § 2302(b)(9)(A)(i), not § 2302(b)(8). Miller admits that he made the allegations about inadequate FDIC policies and proceedings as part of his grievance process. Even though he initiated the grievance proceedings because of the Letter of Warning, Miller alleges that some of the personnel actions taken against him were because of his continued desire to seek relief through the grievance process, including, presumably, his disclosures about FDIC policies and practices. The Board therefore properly concluded that Miller's disclosures were protected under § 2302(b)(9)(A)(i), and applying the pre-WPEA statute, did not err in dismissing Miller's appeal for lack of jurisdiction.

Because the Board did not err in dismissing Miller's appeal for lack of jurisdiction, we affirm the Board's decision.

**AFFIRMED**