**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| XICHUN SUN, | DOCKET NUMBER |
| Appellant, | DC-1221-21-0257-W-1 |
| v. | |
| DEPARTMENT OF VETERANS AFFAIRS, | DATE: March 20, 2024 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

Ibidun Roberts, Esquire, Columbia, Maryland, for the appellant.

Michael J.A. Klein, Esquire, Baltimore, Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**BACKGROUND**

On February 19, 2021, the appellant e-filed his appeal with the Board. Initial Appeal File (IAF), Tab 1. The appeal contained no text but included a close-out letter from the Office of Special Counsel (OSC) noting that it was terminating its investigation into the appellant's allegations that the agency "investigated [him], suspended [his] clinical privileges, removed [him], assigned [him] to a different office upon [his] return to the agency, placed [him] on multiple focused professional practice evaluations, issued [him] a reprimand, and denied [his] sick leave in retaliation for appealing [his] 2018 removal, engaging in union activity, and cooperating with the Office of Inspector General in September 2019." *Id.* at 5. The e-appeal transmittal sheet instructed the appellant to submit all hardcopy documents to the Central Regional Office (CRO) and provided the mailing address, phone number, and fax number for that office. *Id*. at 4. The appellant also received an email confirming that his appeal had been filed and noting the same instructions for filing documents in hardcopy.[2] Petition for Review (PFR) File, Tab 1 at 8.

On February 23, 2021, the administrative judge issued a jurisdictional order instructing the appellant to file evidence and argument supporting the Board's jurisdiction over his IRA appeal. IAF, Tab 3. It instructed him to specifically identify the alleged protected activity and the personnel actions complained of. *Id.* The appellant did not file a response. On March 15, 2021, the agency filed a motion to dismiss the appeal for lack of jurisdiction and the administrative judge issued an initial decision dismissing the appeal on the same day, finding no basis for Board jurisdiction based on the documents in the record. IAF, Tabs 5, 6.

Unbeknownst to the administrative judge, on February 23, 2021, the same day that she issued the jurisdictional order, the appellant had faxed a 77-page narrative submission to the CRO in accordance with the instructions received

_____

[2] These instructions appear to have been in error, as the appeal was adjudicated by the Washington Regional Office (WRO) and not the CRO.

from the Board. IAF, Tab 8 at 1; PFR File, Tab 1 at 10. The appellant sent the same documents to the CRO by certified mail on the following day. PFR File, Tab 1 at 11. On March 16, 2021, the WRO received the appellant's 77-page submission, presumably from the CRO, and it was uploaded to the e-appeal system on that same day. IAF, Tab 8.

The appellant has filed a petition for review of the initial decision, and the agency has filed a response. PFR File, Tabs 1, 3. The appellant's petition for review asserts that he never received the jurisdictional order, but nonetheless, his 77-page submission was timely filed in accordance with instructions received from the Board, and that this information is sufficient to establish jurisdiction over the appeal. PFR File, Tab 1 at 1-7.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appellant filed his 77-page submission on February 23, 2021, in accordance with the instructions contained in the initial appeal document and the email he received confirming that his appeal was submitted. IAF, Tab 1 at 4, Tab 8 at 1. The document was submitted prior to the close of the record before the administrative judge. Thus, we will consider the evidence as if it had been in the record at the time it closed. *See Mandel v. Office of Personnel Management*, 86 M.S.P.R. 299, ¶ 4 (2000), *aff'd*, 20 F. App'x 901 (Fed. Cir. 2001) (reopening a closed case to consider evidence that was inadvertently omitted from the appellate record)). Moreover, the issue of Board jurisdiction may be raised at any time during a proceeding. *Morgan v. Department of the Navy*, 28 M.S.P.R. 477, 478 (1985).

To establish jurisdiction in an IRA appeal, an appellant must show by preponderant evidence that he exhausted his remedies before OSC and make nonfrivolous allegations of the following: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity

was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 8 (2016), *overruled on other grounds by Requena v. Department of Homeland Security*, 2022 MSPB 39. A protected disclosure is a disclosure of information that the appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8).

A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s). The U.S. Court of Appeals for the Federal Circuit has found that, in the context of an IRA appeal, a nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020). If an appellant establishes Board jurisdiction over an IRA appeal by exhausting his administrative remedies before OSC and making the requisite nonfrivolous allegations, he has a right to a hearing on the merits of his claim. *Grimes v. Department of the Navy*, 96 M.S.P.R. 595, ¶ 6 (2004). Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of affording the appellant a hearing. *Id.*, ¶ 12.

For the following reasons, we find jurisdiction over this appeal and remand the appeal for adjudication of the merits.

<u>The appellant exhausted his administrative remedies with OSC.</u>

As noted above, to establish jurisdiction over an IRA appeal, an appellant must, among other things, establish OSC exhaustion by preponderant evidence. *Corthell*, 123 M.S.P.R. 417, ¶ 8; *see Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 9 (2011) (explaining that the appellant must prove exhaustion with OSC, not merely present nonfrivolous allegations of exhaustion). To satisfy the exhaustion requirement, the appellant must inform OSC of the

precise ground of his charge of whistleblowing, giving OSC a sufficient basis to pursue an investigation that might lead to corrective action. *Mason*, 116 M.S.P.R. 135, ¶ 8. An appellant may demonstrate exhaustion through his initial OSC complaint, evidence that he amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and the appellant's written responses to OSC referencing the amended allegations. *Id.*

Upon considering OSC's close-out letter and the appellant's correspondence with OSC, we find that the appellant exhausted the following alleged protected activities with OSC: appealing his 2018 removal, engaging in union activity, responding to a State Licensing Board inquiry in June 2019, and cooperating with the Office of the Inspector General (OIG) in September 2019. IAF, Tab 1 at 5, Tab 8 at 71; *see Miller v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 3, ¶¶ 6-10 (2014) (quoting *Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1037 (Fed. Cir. 1993)) (noting that allegations of protected activity must be specifically alleged before OSC with "reasonable clarity and precision"), *aff'd*, 626 F. App'x 261 (Fed. Cir. 2015). While the appellant may have attempted to raise additional allegations of protected activity in his 77-page submission, we find no evidence in the record that additional activities beyond those described above were exhausted with OSC.[3]

To the extent that the appellant attempted to raise a claim that the agency retaliated against him for a protected disclosure pursuant to 5 U.S.C. § 2302(b)

---

[3] The appellant's pleadings contain a vague reference to two OSC complaints filed in 2017. IAF, Tab 8 at 4. To the extent the appellant is claiming that his alleged 2017 OSC complaints constitute protected activity, we find no evidence that the appellant exhausted this claim with OSC. The activity is not included in OSC's close-out letter, and its December 15, 2020 email to the appellant states, "OSC is not aware of any protected activity you engaged in prior to your [May 2018] removal"). *Id.* at 13; IAF, Tab 1 at 5. The appellant does not appear to have responded to this email. Even if we were to find that the appellant proved that he exhausted this activity with OSC, the appellant has not alleged that the agency had knowledge of the 2017 OSC complaints, and thus, he has not nonfrivolously alleged that this activity was a contributing factor to any of the personnel actions alleged. *See* 5 U.S.C. § 1221(e)(1)(A).

(8), he has failed to present evidence that he exhausted specific alleged protected disclosures with OSC. IAF, Tab 8 at 76 (notifying the appellant that he did not provide details to support an allegation of gross mismanagement, abuse of authority, gross waste of funds, and substantial and specific danger to public health). The appellant's correspondence with OSC lacks any specificity regarding alleged reprisal for making a protected disclosure under section 2302(b)(8), such as details regarding the contents of his disclosures and the individuals to whom they were made. *Cf. Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 8 (2008) (finding that an appellant satisfied the exhaustion requirement when, with reasonable clarity and precision, he informed OSC of the content of his disclosure, the individual to whom it was made, the nature of the personnel actions allegedly taken in retaliation, and the individuals responsible for taking those actions).

As for the personnel actions that the appellant exhausted before OSC, OSC's close-out letter identifies the following agency actions: the agency investigated the appellant, suspended his clinical privileges, removed him, assigned him to a different office space upon his return to the agency, placed him on multiple focused professional practice evaluations, issued a reprimand, and denied him sick leave. IAF, Tab 1 at 5. Thus, we find that the appellant exhausted his remedies with OSC regarding these alleged personnel actions.

## The appellant has nonfrivolously alleged that he engaged in protected activity when he participated in an OIG interview in September 2019.

The appellant's filings do not identify which type of protected activity he is alleging. As set forth below, we have thus considered whether each of the allegations in the appellant's OSC close-out letter constitutes a nonfrivolous allegation of a protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).

We first consider the appellant's 2018 removal appeal submitted to the Veterans Affairs Disciplinary Appeals Board. Under 5 U.S.C. § 2302(b)(9)(A)(i),

it is a prohibited personnel practice "to take or fail to take, or threaten to take or fail to take, any personnel action against ay employee or applicant for employment because of the exercise of any appeal, complaint, or grievance right granted by any law, rule or regulation, with regard to remedying a violation" of 5. U.S.C. § 2302(b)(8).[4]  Here, the appellant's removal appeal itself is not in the record.  The appellant stated to OSC that his appeal "pointed out the absurdity of the two investigations and suspension of my clinical privileges."  IAF, Tab 8 at 71.  He has not, however, alleged that his 2018 removal appeal concerned remedying an alleged violation of 5 U.S.C. § 2302(b)(8).  We thus find that the appellant's removal appeal does not constitute protected activity under section 2302(b)(9)(A)(i) because he has not nonfrivolously alleged that his appeal concerned remedying an alleged violation of 2302(b)(8), as set forth above.  *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013).

Next, we consider the appellant's allegation the he was retaliated against for engaging in union activity.  IAF File, Tab 1 at 5.  The appellant makes sparse references to the union throughout his filing and notes that the union assisted him in appealing his 2018 removal.  IAF, Tab 8 at 29-30.  Under 5 U.S.C. § 2302(b)(9)(B), it is unlawful for an individual to take, fail to take, or threaten to take or fail to take a personnel action because of the employee "testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in [5 U.S.C. § 2302(b)(8)(A)](i) or (ii)."  Performing union-related duties, such as filing grievances and representing other employees in the grievance process, are protected activities under section 2309(b)(9).  *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 10 (2015).  An appellant can establish that he was involved in protected activity under section 2302(b)(9)(B) by proving that he testified or assisted another employee in any appeal, complaint, or grievance right granted by

---

[4] The Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat 1465, extended the Board's jurisdiction over IRA appeals to claims arising under 5 U.S.C. § 2302(b)(9)(A)(i), but not to those arising under (b)(9)(A)(ii).  *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013).

any law, rule, or regulation. *Id.*, ¶ 13. The appellant has not alleged that he testified or assisted another employee in the grievance process, and thus, we find that he has failed to nonfrivolously allege that his union activity is protected activity pursuant to section 2302(b)(9)(B).

We next consider the appellant's June 2019 response to the State Licensing Board. IAF, Tab 8 at 71.[5] The response itself is not in the record, however, the appellant explained in his filings that he "had to defend [his] practice and provide documents to support [his] statement." *Id.* at 37. To the extent the appellant is attempting to allege that this constitutes protected activity, we find that he has failed to make a nonfrivolous allegation that the June 2019 response was protected under 5 U.S.C. § 2302(b)(9)(A)(i),(B),(C), or (D).

However, we find that the appellant has nonfrivolously alleged that he engaged in activity protected by section 2302(b)(9)(C) when he cooperated with or disclosed information to the OIG between September and November 2019, and that he exhausted this protected activity with OSC. IAF, Tab 1 at 5, Tab 8 at 71; *see* 5 U.S.C. § 2302(b)(9)(C) (defining protected activity as "cooperating with or disclosing information to the Inspector General"). This allegation, accepted as true, is sufficient to find jurisdiction pursuant to section 2302(b)(9)(C).

The appellant has nonfrivolously alleged that his September 2019 OIG activity was a contributing factor to personnel actions taken by the agency.

As set forth above, OSC's close-out letter identifies the following personnel actions: the agency investigated the appellant, suspended his clinical privileges, removed him, assigned him to a different office space upon his return to the agency, placed him on multiple focused professional practice evaluations, issued a reprimand, and denied him sick leave. IAF, Tab 1 at 5. The appellant may demonstrate that a protected activity was a contributing factor in a personnel

---

[5] The appellant's email to OSC refers to his response to the "SLE" inquiry in June 2019. IAF, Tab 8 at 71. However, we believe this is a typographical error. The appellant submitted a response to the State Licensing Board (SLB) in June 2019 and we believe this is the alleged protected activity he intended to exhaust with OSC. *Id.* at 37.

action through circumstantial evidence, including, but not limited to, evidence that the official taking the personnel action knew of the protected activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *see Easterbrook v. Department of Justice*, 85 M.S.P.R. 60, ¶ 7 (2000). A protected activity that occurs after the agency has already taken the personnel actions at issue cannot have been a contributing factor in the personnel actions and does not support a nonfrivolous allegation that the protected activity was a contributing factor in the personnel actions. *See Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 26 (2007) (finding that disclosures that were made prior to the personnel actions at issue could not have been contributing factors in the personnel actions). Thus, we consider only the alleged personnel actions that occurred after the protected activity in September 2019: extension of the Focused Professional Practice Evaluation in October 2019, investigation into the appellant in November or December 2019, June 2020 reprimand, and denial of a sick leave request in late-June or early-July 2020. IAF, Tab 1 at 5, Tab 8 at 7, 40, 47-48, 56, 59-61. The remaining personnel actions identified in the close-out letter occurred prior to September 2019.

A letter of reprimand is a personnel action within the meaning of the Whistleblower Protection Act. *Horton v. Department of Veterans Affairs*, 106 M.S.P.R. 234, ¶ 18 (2007). Regarding the appellant's remaining allegations, the definition of "personnel action" includes "any . . . significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). While the U.S. Court of Appeals for the Federal Circuit has held that retaliatory investigations, in and of themselves, do not constitute personnel actions, *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 954-55 (Fed. Cir. 2020), the Board has found that agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an

employee's working conditions, duites, or responsibilities constitute a personnel action covered by section 2302(a)(2)(A)(xii), *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 15-16.  We find that, similar to *Skarada*, the actions complained of, if proven true, could meet this threshold.  *Id.*, ¶ 18 (concluding that the appellant's allegations that agency personnel harassed him, subjected him to a hostile work environment, subjected him to multiple investigations, accused him of fabricating data, refused his request for a review of his position for possible upgrade, yelled at him, and failed to provide him the support and guidance to successfully perform his duties amounted to a nonfrivolous allegation of a significant change in his working conditions).  Insofar as the appellant alleged that management was aware of his September 2019 OIG activity and that the personnel actions commenced shortly thereafter, we find that he has satisfied the contributing factor jurisdictional element.  IAF, Tab 8 at 7-8, PFR File, Tab 1 at 5; *see Easterbrook*, 85 M.S.P.R. 60, ¶ 7.

Accordingly, we find that the appellant made a nonfrivolous allegation of jurisdiction and that he is entitled to a hearing on the merits.  Prior to conducting a hearing, the administrative judge shall afford the parties a reasonable opportunity to complete discovery and order the parties to submit any other evidence that the administrative judge deems necessary to adjudicate the merits of the appeal.[6]  *Lewis v. Department of Defense*, 123 M.S.P.R. 255, ¶ 14 (2016).

---

[6] Our jurisdictional findings herein are based on the appellant's 77-page submission. IAF, Tab 8.  If the administrative judge deems it necessary, she may make further findings regarding which personnel actions and protected activities and/or disclosures are properly before the Board and fully address the appellant's arguments and evidence as to those matters.

**ORDER**

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD:                              _____
                                                          Gina K. Grippando
                                                          Clerk of the Board

Washington, D.C.