NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**SHASTA DOMONI STALEY,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

_____

2020-2127

_____

Petition for review of the Merit Systems Protection Board in No. DC-1221-19-0639-W-1.

_____

Decided: July 15, 2021

_____

SHASTA DOMONI STALEY, Whitsett, NC, pro se.

MARIANA TERESA ACEVEDO, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR.

_____

Before CHEN, CLEVENGER, and HUGHES, *Circuit Judges*.

PER CURIAM.

Shasta D. Staley appeals from a final decision of the Merit Systems Protection Board (Board) denying her request for corrective action by the Department of Veterans Affairs (VA) for a personnel action prohibited under the Whistleblower Protection Act, as amended by the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465. *Staley v. Dep't of Veterans Affairs*, No. DC-1221-19-0639-W-1, 2020 WL 1983454 (Apr. 20, 2020) (*Board Decision*). For the reasons discussed, we *affirm*.

## BACKGROUND

Ms. Staley worked at the VA as a rating veterans service representative. On October 18, 2018, the agency initiated a proposed removal and, on October 30, 2018, decided to remove her. The removal action was not under review in the Board proceeding below nor is at issue in this appeal. Before the VA effectuated her removal, Ms. Staley notified the agency that she had recently filed a complaint with the Office of Special Counsel (OSC). She requested the agency to stay the removal action pending guidance from the OSC. The VA agreed.

The nature of the OSC complaint is unclear from the parties' briefing and the *Board Decision*, but it appears to qualify as protected activity under 5 U.S.C. § 2302(b)(9)(A)(i).[1] In response to this activity, alleges

---

[1]    Respondent's brief discusses only protected disclosure under 5 U.S.C. § 2302(b)(8), Resp't's Br. 15–16, but the record shows the Board viewed the filing of the OSC complaint as a protected activity under § 2302(b)(9), J.A. 537–38 (discussing the basis for the Board's jurisdiction). *See Miller v. Merit Sys. Prot. Bd.*, 626 F. App'x 261, 267 (Fed. Cir. Aug. 6, 2015) (explaining § 2302(b)(8) protects whistleblowing and § 2302(b)(9)(A)(i) protects exercising a

Ms. Staley, the VA engaged in retaliatory personnel action against her—specifically, the revocation of previously approved leave without pay (LWOP) under the Family and Medical Leave Act (FMLA), and its conversion into absence without leave (AWOL). That action followed a decision by the VA to re-review Ms. Staley's already approved FMLA application and occurred while the review of her OSC complaint was pending.

According to the agency, the re-review was prompted by Ms. Staley's occasional appearances at the office while she was supposed to be out on FMLA leave. Ms. Staley's position is that the re-review was initiated to assist the VA in receiving a favorable outcome in the OSC investigation. After the review, the agency concluded that Ms. Staley's FMLA application lacked sufficient supporting medical information and had been improperly granted. Specifically, the application did not identify a serious health condition.

The FMLA application had included information from Ms. Staley's doctor, Dr. Diana Lizardo. In response to a question of whether Ms. Staley's medical condition made her unable to perform any of her job functions, Dr. Lizardo had checked "no." J.A. 1773. In response to a question regarding the nature of Ms. Staley's treatment, she wrote: "Physical therapy & Psychiatry & Neurology." *Id.* In similarly general terms, in response to another question asking for a description of relevant medical facts related to the condition for which leave was being sought, Dr. Lizardo wrote:

> Patient will need time to rest to reduce fatigue. Physical therapy requires multiple visits in a short

grievance right related to whistleblowing). Regardless, although the specifics of the OSC complaint are not discussed, the Board appears to have had jurisdiction, which is not presently disputed. *See* 5 U.S.C. §§ 1214(a)(3), 1221(a).

> period of time. Some medications can make her
> sleepy, she should not drive, but she can work from
> home.

*Id.*

Although the agency found the FMLA application to be deficient, it offered Ms. Staley the opportunity to submit updated medical documentation, within fourteen days, to preserve her FMLA leave. Otherwise, she could have her past FMLA leave converted to another type of leave of her choosing. If Ms. Staley took neither of these actions, the FMLA leave she had taken would be converted automatically to AWOL. However, the agency informed Ms. Staley it would not take any disciplinary action based on that retroactively applied AWOL, which it acknowledged would be the result of the agency's own error in granting FMLA leave in the first place. VA employees offered to meet with Ms. Staley to discuss the deficiencies in her documentation. Ms. Staley ultimately did not take up these offers to meet—she contends that there were justified reasons for why she did not, specifically that the agency was trying to hide information by meeting rather than communicating through emails—nor did she provide additional documentation. Accordingly, her FMLA leave was converted to AWOL.

On July 1, 2019, Ms. Staley filed an individual right of action (IRA) with the Board, claiming that the VA retroactively revoked her FMLA leave in retaliation for the protected activity of filing her OSC complaint. She requested corrective action. Following an evidentiary hearing, the Board determined that Ms. Staley had proven, by a preponderance of the evidence, her prima facie case of retaliation. But the Board denied her request for corrective action because it found that the agency had proven by clear and convincing evidence it would have taken the same action absent Ms. Staley's protected activity.

Ms. Staley timely appealed the Board's final decision. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(9). Ms. Staley argues that the Board's conclusion that the VA had rebutted her prima facie case by clear and convincing evidence is unsupported by substantial evidence. Ms. Staley also raises a due process violation by the agency and errors in the Board's discovery and evidentiary rulings.

## DISCUSSION

We must affirm a decision of the Board unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Berlin v. Dep't of Labor*, 772 F.3d 890, 894 (Fed. Cir. 2014) (internal quotation marks omitted). We do not disturb the Board's credibility determinations unless they are "inherently improbable or discredited by undisputed fact." *Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1149 (Fed. Cir. 1997). We review "the Board's determinations of law for correctness, without deference to the Board's decision." *King v. Dep't of Navy*, 130 F.3d 1031, 1033 (Fed. Cir. 1997).

Once a petitioner has established a prima facie case that she engaged in protected activity which was a contributing factor in a personnel action taken against her, the burden of persuasion is on the agency to show by clear and convincing evidence that it would have taken the same personnel action in the absence of such activity. 5 U.S.C. § 1221(e); *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). To determine if the agency has carried its burden, the Board considers the three *Carr* factors: (1) "the strength of the agency's evidence in support of its personnel action," (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved

in the decision," and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). An agency is not required to produce evidence with respect to each and every one of these factors. Rather, the factors are "merely appropriate and pertinent considerations" for determining whether the agency carried its burden. *Whitmore*, 680 F.3d at 1374. Analyzing these factors, the Board found the VA had shown by clear and convincing evidence that it would have revoked Ms. Staley's FMLA leave even if Ms. Staley had not filed her OSC complaint. The Board's determination is supported by substantial evidence.

With respect to the first *Carr* factor, the Board made several fact findings. As an initial matter, the agency's decision to re-review Ms. Staley's FMLA application was based on seeing Ms. Staley come into the office on a day she was on leave and supposedly incapacitated from working. The Board found Ms. Staley's appearance to be a reasonable basis for reopening the review.[2] The change from

---

[2]    Ms. Staley points out that the definition of incapacity concerns the ability to work and not whether an employee is physically present at the workplace. Therefore, she argues, the Board should have disregarded her mere presence at work for having no probative value as to whether Ms. Staley had a serious health condition and was eligible for FMLA leave. However, the proper inquiry before the Board and in this appeal "is not whether the agency action is justified; it is whether the agency would have acted in the same way absent the whistleblowing." *Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1365 (Fed. Cir. 2019). Under the circumstances, it was reasonable for her appearance, on a day she wasn't expected, to have raised a question about her FMLA status and prompted another

finding Ms. Staley's FMLA application grantable when first reviewed to improperly granted when re-reviewed was reasonably explained by human resources specialist Ariel Handsome's testimony. Ms. Handsome was the one who had previously reviewed and recommended Ms. Staley's application. Ms. Handsome testified that only later, after receiving additional training, did she recognize that Ms. Staley's documentation was insufficient to support an FMLA request and her initial assessment had been in error, which the Board found credible. Typically, Ms. Handsome's evaluation would have been reviewed by a supervisor, Sabrina Smith, before being sent for approval. But Ms. Staley herself had requested that Smith not be allowed to see her information and so, because of that, Smith did not conduct a secondary review. Therefore, the final approval relied on Ms. Handsome's erroneous recommendation. The Board also found that, based on the information provided by Dr. Lizardo, there was "no way for the agency to have determined whether the appellant indeed suffered from a serious health condition, and further whether her condition whatever it might have been, made her unable to perform any of her essential job duties." J.A. 20. Thus, the Board reasonably found the VA presented strong evidence for its decision to request additional documentation and then revoke FMLA leave when it did not receive the documentation.

Ms. Staley contends that her FMLA application contained sufficient, general information because there is no

---

look at her application. In other words, Ms. Staley's appearance was a reasonable reason to trigger the re-review which led to the revocation of her leave, even if it, without more, could not have been a proper basis for the revocation itself. That would require something else, which in this case turned out to be the lack of documentation showing a serious health condition.

requirement that the agency be allowed or required to determine the nature and seriousness of an employee's condition from an FMLA application. She argues that, in fact, the agency's request for additional medical information was an improper invasion of her privacy. Ms. Staley's argument lacks merit. An employee must have a "serious health condition" that "makes the employee unable to perform any one or more of the essential functions of his or her position" to be entitled to FMLA leave. 5 C.F.R. § 630.1203(a)(4). The agency must be given sufficient information to determine whether an employee's situation satisfies those requirements to grant FMLA leave.

As to the second *Carr* factor, the Board reasonably found a lack of retaliatory motive in view of the manner in which the agency handled the situation after it discovered the deficiencies in Ms. Staley's FMLA application. The agency could have immediately revoked the grant of FMLA or immediately converted Ms. Staley's leave to AWOL and then taken disciplinary action based on the AWOL. Instead, Ms. Staley was given time to provide new documentation to support her FMLA status or to request another type of leave. Conversely, based on the email evidence in the record before it, the Board was not persuaded by Ms. Staley's arguments for why she did not meet with agency officers to discuss those options nor ultimately provide the additional information. The Board also found credible the testimony of agency employees regarding either not knowing the existence or content of the OSC complaint or not being affected by the OSC complaint while handling the FMLA review. The Board reasonably concluded that the OSC complaint was not a motive for the revocation of Ms. Staley's FMLA leave.

On the third *Carr* factor, the Board rejected Ms. Staley's comparator evidence for showing a disparity in treatment. Like Ms. Staley, the comparator had been requested to provide additional medical documentation. But unlike Ms. Staley, the comparator provided the

additional documentation.  Substantial evidence therefore supports the Board's conclusion that the comparator evidence supported the agency's claim of not treating Ms. Staley differently from other employees.

In sum, substantial evidence supports the Board's determination that the VA demonstrated by clear and convincing evidence that it would have reviewed and revoked Ms. Staley's FMLA leave even if Ms. Staley had not filed her OSC complaint.

We reject the remaining arguments raised by Ms. Staley in this appeal.  There was no due process violation.  As discussed above, Ms. Staley was provided a fair opportunity to justify her FMLA status.[3] The discovery and evidentiary issues raised by Ms. Staley are likewise meritless.  We do not agree with Ms. Staley that the Board abused its discretion in denying her motion to compel discovery responses based on relevancy and privilege grounds. *Whitmore*, 680 F.3d at 1368 ("[P]rocedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." (internal quotation marks omitted)).  The Board also did not abuse its discretion when it declined to disqualify Monique Smart, the agency's counsel, based on finding there was no conflict of interest and Ms. Smart was not a fact witness. *Id.* Accordingly, none of these grounds is a basis to find the Board committed reversible error.

---

[3]    Ms. Staley's due process violation arguments include an allegation that the agency improperly withheld discovery until after the issuance of the *Board Decision*. We already found this argument meritless in denying Ms. Staley's Motion for Leave to File a Supplemental Appendix. Order Denying Mot., ECF No. 31.

**AFFIRMED**

Costs

No costs.