# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DAVID M. HENDY, <br>         Appellant, | DOCKET NUMBER <br> CH-1221-18-0114-W-1 |
|      v. | |
| DEPARTMENT OF VETERANS <br>     AFFAIRS, <br>         Agency. | DATE: May 1, 2024 |

## THIS ORDER IS NONPRECEDENTIAL[1]

<u>David M. Hendy</u>, Chicago, Illinois, pro se.

<u>Zane Perry Schmeeckle</u>, Kansas City, Missouri, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review. We VACATE the initial decision and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

Effective June 8, 2016, the appellant resigned from his Industrial Hygienist position at the agency's Hines Veterans Affairs (VA) Hospital in Hines, Illinois, to receive treatment for service-connected injuries. Initial Appeal File (IAF), Tab 1 at 1-2, Tab 6 at 83. On or around that same day, the appellant met with a Special Agent in the agency's Office of Inspector General (OIG) to discuss, among other things, various safety concerns regarding the facilities and infrastructure of the Hines VA Hospital that he had identified in his Industrial Hygienist position. IAF, Tab 6 at 115. The appellant thereafter applied for 5 agency positions in 2016 and 2017, but he was not selected for any positions. *E.g.*, IAF, Tab 1 at 2, 8-9, 14-22, Tab 6 at 1-2, 7, 26, 56.

On December 14, 2017, the appellant filed this IRA appeal with the Board, and he requested a hearing. IAF, Tab 1 at 1-3. In an Order on Jurisdiction and Proof Requirements, the administrative judge informed the appellant that there was a question whether the Board has jurisdiction over this appeal, apprised him of the elements and burden of proving jurisdiction in an IRA appeal, and ordered him to file a statement with accompanying evidence on the jurisdictional issue. IAF, Tab 3.

In response, the appellant submitted letters from the Office of Special Counsel (OSC) concerning a complaint that he had filed against the agency. IAF, Tab 9 at 19-21, Tab 12 at 26-28. In a January 11, 2018 letter, OSC informed the appellant of its preliminary determination to close its inquiry into his complaint. IAF, Tab 9 at 19-21. In February 15, 2018 letters, OSC notified the appellant of its final determination to close its inquiry into his complaint and apprised him of the right to file an IRA appeal seeking corrective action from the Board for alleged prohibited personnel practices under 5 U.S.C. § 2302(b)(8) and (b)(9). IAF, Tab 12 at 26-28. In pertinent part, OSC described his complaint as alleging that, in his Industrial Hygienist position, he reported safety violations (specifically "mold issues") to agency officials and to the agency's OIG. IAF,

Tab 9 at 19-20. OSC also noted that the appellant provided a Report of Contact that was signed by his supervisor, and he alleged that his supervisor falsified and submitted this report to human resources to block his selection for any positions for which he had applied. IAF, Tab 9 at 23, Tab 12 at 27.

The appellant asserted in response to the jurisdiction order that the agency perceived him as a whistleblower because he, among other things, (1) reported insufficient resources for the Industrial Hygienist position, (2) complained that his veterans' preference rights were being violated, (3) filed an OIG complaint that resulted in an investigation, (4) conducted a preliminary investigation into an ongoing mold problem, (5) documented exposure to mold, asbestos, and unsanitary conditions, and (6) reported safety issues concerning a steam tunnel system and environmental and safety hazards concerning a hazardous waste shed. IAF, Tab 6 at 1-23, Tab 9 at 1-13, Tab 10 at 1-13. He also claimed that he was perceived as a whistleblower because he previously raised a whistleblower reprisal claim against the Jesse Brown VA Medical Center in a prior OSC complaint[1] and Board appeal.[2] IAF, Tab 6 at 3, 8, 10-14, 18, 20, 22-23, Tab 9 at 5, 8, Tab 10 at 4. The appellant alleged that because he was perceived as a whistleblower, the agency did not select him for various positions in 2016 and 2017, his supervisor falsified a Report of Contact and subjected him to a hostile work environment (including a change in working conditions and harassment), and a Director canceled a meeting with him. IAF, Tab 6 at 1-23, Tab 9 at 1-13, Tab 10 at 1-13. The agency requested the Board to dismiss this appeal for lack of jurisdiction. IAF, Tab 8 at 4-5, 9.

---

[1] The appellant asserted that his prior OSC complaint was filed on August 23, 2013, and was closed on February 25, 2014. IAF, Tab 6 at 2, 122.

[2] The appellant's prior Board appeal against the agency concerned his probationary termination from a position at the Jesse Brown VA Medical Center, and it was dismissed as settled. *David Hendy v. Department of Veterans Affairs*, MSPB Docket No. CH-315H-13-4605-I-2, Final Order (Feb. 19, 2015).

Without holding the requested hearing, the administrative judge issued an initial decision dismissing this appeal for lack of jurisdiction because the appellant failed to prove that he exhausted his administrative remedies before OSC.[3]  IAF, Tab 13, Initial Decision (ID) at 1, 3-6.

The appellant has filed a petition for review and several supplemental submissions, the agency has filed a response, and the appellant has filed a reply brief.  Petition for Review (PFR) File, Tabs 6-27, 30, 35.

The appellant has filed a motion to waive the time limit for filing a petition for review.  PFR File, Tab 28.  Because the Clerk of the Board granted his two requests for an extension of time to file a perfected petition for review, PFR File, Tabs 2-5, we find that his PFR and supplemental submissions were timely filed.  Accordingly, we deny his motion to waive the filing deadline.

The appellant also has filed a motion to waive the time limit for filing a reply to the agency's response.  PFR File, Tab 35 at 5, Tab 36.  We find good cause to grant his motion based on his explanation and supporting medical documentation concerning his medical conditions during the relevant time frame, which resulted in a brief 10-day delay in filing his reply.  *See Lacy v. Department of the Navy*, 78 M.S.P.R. 434, 437 (1998) (explaining that the Board will find good cause for waiver of its filing time limits when a party demonstrates that he suffered from an illness that affected his ability to file on time); *see also* 5 C.F.R. § 1201.114(g).

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board's jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation.  *Maddox v. Merit Systems*

---

[3] To the extent this appeal may have been prematurely filed on December 14, 2017, IAF, Tab 1, it became ripe for adjudication when OSC issued its February 15, 2018 close-out letter, IAF, Tab 12 at 27-28; *see e.g.*, *Jundt v. Department of Veterans Affairs*, 113 M.S.P.R. 688, ¶ 7 (2010) (stating that it is the Board's practice to adjudicate an appeal that was premature when it was filed but became ripe when pending before the Board).

*Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985). To establish jurisdiction in a typical IRA appeal under the Whistleblower Protection Enhancement Act of 2012 (WPEA), an appellant must prove by preponderant evidence[4] that he exhausted his administrative remedies before OSC and make nonfrivolous allegations[5] that (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A). *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 8 (2016), *overruled on other grounds by Requena v. Department of Homeland Security*, 2022 MSPB 39. Once an appellant establishes jurisdiction over an IRA appeal, he is entitled to a hearing on the merits of his claim, which he must prove by preponderant evidence. *Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶ 9 (2015). For the following reasons, we find that the appellant has established jurisdiction over this IRA appeal.

<u>The appellant proved by preponderant evidence that he exhausted his administrative remedies before OSC.</u>

Under 5 U.S.C. § 1214(a)(3), an employee is required to "seek corrective action from [OSC] before seeking corrective action from the Board" through an IRA appeal. *Miller v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 3, ¶ 6 (2014), *aff'd*, 626 F. App'x 261 (Fed. Cir. 2015). The purpose of the exhaustion requirement is to give OSC "the opportunity to take corrective action before involving the Board in the case." *Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992). To satisfy this requirement, an appellant must provide to OSC a sufficient basis to pursue an investigation that

---

[4] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

[5] A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s).

might lead to corrective action. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10.

The appellant did not provide a copy of his OSC complaint or any of his written correspondence to OSC, nor did he submit an affidavit, sworn statement, or declaration under penalty of perjury explaining what claims he raised before OSC. Instead, as described above, the appellant submitted correspondence from OSC that identified the claims that he raised in his complaint. IAF, Tab 9 at 19-21, Tab 12 at 26-28. Although OSC's characterizations of the appellant's allegations are not binding on the Board, *Bloom v. Department of the Army*, 101 M.S.P.R. 79, ¶ 10 (2006), the appellant does not dispute OSC's characterizations of his allegations. Therefore, we have only considered OSC's characterization of the appellant's claims as part of our exhaustion analysis.

In his petition for review, the appellant cites *Briley v. National Archives and Records Administration*, 236 F.3d 1373 (Fed. Cir. 2001), to support his argument that he exhausted his OSC remedies because he gave OSC information containing the core of his retaliation claim and a sufficient basis to conduct an investigation. PFR File, Tab 6 at 15-17. We agree.

Based on the OSC letters described above, we find that the appellant made a reasonably clear and precise claim with OSC that his nonselections in 2016 and 2017 and his supervisor's Report of Contact were taken in retaliation for reporting safety violations at the Hines VA Hospital to agency officials and to the agency's OIG, and thus, OSC had a sufficient factual basis to pursue an investigation. IAF, Tab 9 at 19-21, Tab 12 at 26-28. Therefore, we find that the appellant met his burden of proving by preponderant evidence that he exhausted his administrative remedies regarding these claims.

However, we find that the appellant failed to prove exhaustion regarding the additional reprisal claims raised in this appeal. In particular, the OSC letters do not mention any allegedly retaliatory agency actions other than the appellant's nonselections and the Report of Contact, any claim that he was perceived as a

whistleblower or that he reported insufficient resources for his Industrial Hygienist position, or any allegations concerning his prior whistleblowing disclosures at the Jesse Brown VA Medical Center or his prior Board appeal. OSC's January 11, 2018 letter acknowledged that the appellant alleged that his veterans' preference rights may have been violated during the hiring process; however, OSC did not indicate that he alleged reprisal for disclosing a violation of such rights. IAF, Tab 9 at 20. Further, OSC's statement in its February 15, 2018 letter that the appellant requested the closure letter of a prior OSC complaint does not suggest that he alleged reprisal in this matter based on that prior complaint. IAF, Tab 12 at 27.

With his petition for review, the appellant includes new evidence, including, among other things, his March 8, 2018 and May 20, 2018 emails (in which he asked OSC to reopen his complaint based on new information and evidence), OSC's May 21, 2018 response denying his request to reopen the complaint and informing him that he could file a new complaint, and his May 8-9, 2018 emails (on which the OSC investigator was carbon copied) concerning his new application for the Industrial Hygienist (Green Environmental Management Systems (GEMS) Coordinator) position. PFR File, Tab 6 at 18-19, 29, Tab 23 at 10-22, 32-48. This evidence may be relevant to whether he exhausted a claim of reprisal involving a nonselection for a position as an Industrial Hygienist (GEMS Coordinator) in 2018. Because OSC closed his complaint regarding the allegations in this matter on February 15, 2018, and the OSC investigator denied his request to reopen his complaint, his subsequent communications with OSC cannot serve to prove exhaustion of any additional claims before OSC.

For the first time on review, the appellant alleges that the agency retaliated against him for "testifying or otherwise lawfully assisting any individual in the exercise of any right such as himself making a [Department of Labor Veterans' Employment and Training Service] complaint" and for "refusing to obey an order that would require [him] to violate a law." PFR File, Tab 6 at 10-11. Even if we

construe his claim as an allegation of reprisal for activity protected by 5 U.S.C. § 2302(b)(9)(B) and/or (D), the appellant fares no better. Importantly, there is no evidence that he exhausted such a claim with OSC, and he has not explained why he was unable to raise this claim before the administrative judge. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (finding that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

The appellant has nonfrivolously alleged that he made whistleblowing disclosures and engaged in activity protected by 5 U.S.C. § 2302(b)(9)(C).

The next jurisdictional inquiry is whether the appellant has made a nonfrivolous allegation that he made a whistleblowing disclosure or engaged in protected activity. *Corthell*, 123 M.S.P.R. 417, ¶ 8. A nonfrivolous allegation of a protected disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 6 (2016). The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id*.

The appellant's submissions are not a model of clarity. However, we have identified the following disclosures of safety violations that he made at the Hines VA Hospital: (1) he investigated and reported on an ongoing mold problem, which showed that his supervisor, as the Safety Manager, was noncompliant with Federal Health and Safety Program requirements and had ignored the problem for months; (2) he reported mold growing on walls and entering the ventilation

system and unsanitary conditions (specifically feces on the floors and toilets) in Building 17; (3) he reported asbestos in Building 9, to which young children were apparently exposed; (4) he reported that a dilapidated steam tunnel system contained asbestos and posed a danger of steam leaks, and a contract providing rescue services for the steam tunnel system was not in compliance with Occupational Safety and Health Administration regulations; and (5) he reported that his work-related injury was caused by his supervisor's failure to fix problems with a hazardous waste shed. IAF, Tab 6 at 3-4, 8-9, 16-17, 22, Tab 9 at 4, 8-9, 12-13, Tab 10 at 3-4, 11. The appellant further asserted that the information he reported evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, and a substantial and specific danger to public health or safety. IAF, Tab 6 at 18.

We find that the appellant has nonfrivolously alleged that a reasonable person in his position would believe that disclosures (1)-(5) evidenced violations of a law, rule, or regulation and a substantial and specific danger to public health or safety.[6] *See, e.g.*, *Schoenig v. Department of Justice*, 120 M.S.P.R. 318, ¶ 9 (2013) (finding that a reasonable person would believe that the appellant's alleged disclosures of improper evacuation signage and blocked exit access, among other things, disclosed violations of Federal regulations regarding maintaining a safe workplace); *Wojcicki v. Department of the Air Force*, 72 M.S.P.R. 628, 634-35 (1996) (finding that the appellant reasonably believed that he disclosed a substantial and specific danger to public health or safety when he disclosed that problems with the sandblasting procedure and equipment were exposing him and his coworkers to toxic dust). Indeed, in determining whether a disclosure evidenced a substantial and specific danger to public health or safety,

---

[6] The WPEA clarified, in relevant part, that a disclosure made to a supervisor or to a person who participated in the activity that is the subject of the disclosure or a disclosure made during the normal course of duties is not excluded from 5 U.S.C. § 2302(b)(8). *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 6 n.1 (2016).

it is relevant for the Board to consider factors such as (1) the likelihood of harm resulting from the danger, (2) the imminence of the potential harm, and (3) the nature of the potential harm. *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 14 (2011). We further find that the appellant's allegations of safety issues are specific and, if true, would pose an immediate danger to the health and safety of staff, patients, and visitors at the Hines VA Hospital.

We also find that the appellant has nonfrivolously alleged that a reasonable person in his position would believe that disclosure (1), concerning an ongoing mold problem, evidenced gross mismanagement by his supervisor. Gross mismanagement means more than de minimis wrongdoing or negligence—it means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 11 (2008). If, as the appellant alleges, his mold investigation showed that his supervisor had ignored a serious, ongoing mold problem for months, *e.g.*, IAF, Tab 6 at 3, 9, 16-17, a reasonable person could conclude that the appellant's supervisor committed an act of gross mismanagement undermining the agency's ability to perform its mission of treating patients. By contrast, the appellant has failed to make a nonfrivolous allegation that a reasonable person in his position would believe that disclosures (2)-(5) evidenced more than de minimis wrongdoing or negligence by management that undermined the agency's ability to accomplish its mission.

We further find that the appellant has failed to make a nonfrivolous allegation that a reasonable person in his position would believe that disclosures (1)-(5) evidenced a gross waste of funds or an abuse of authority. A "gross waste of funds" is defined as more than merely a debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the Government. *Mc Corcle v. Department of Agriculture*, 98 M.S.P.R. 363, ¶ 23 (2005). An "abuse of authority" occurs when there is an arbitrary or capricious

exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons. *Id.*, ¶ 24. Here, the appellant's alleged disclosures of safety issues do not suggest that the agency wasted any funds. Further, a reasonable person would not conclude that an arbitrary and capricious exercise of power by an agency official or employee negatively affected any person's rights or resulted in personal gain or advantage to the agency official or to preferred other persons.

Finally, "disclosing information to the Inspector General . . . of an agency . . . in accordance with applicable provisions of law" is activity that is protected by 5 U.S.C. § 2302(b)(9)(C). The appellant's OIG complaint therefore constitutes a nonfrivolous allegation of protected activity. IAF, Tab 6 at 115. Having found that the appellant made a nonfrivolous allegation of a whistleblowing disclosure and protected activity, we now turn to contributing factor.

<u>The appellant has made a nonfrivolous allegation that his whistleblowing disclosures were a contributing factor in the 2016-2017 nonselections.</u>[7]

To satisfy the contributing factor criterion at the jurisdictional stage, an appellant only need raise a nonfrivolous allegation that the fact of, or content of, the whistleblowing disclosure was one factor that tended to affect the personnel action in any way. *Salerno*, 123 M.S.P.R. 230, ¶ 13. Under the

---

[7] The appellant asserted that people at the Hines VA Hospital would have known about his OIG complaint based on the OIG's proximity to other offices and the OIG Special Agent's investigatory actions. IAF, Tab 9 at 7. This assertion is speculative because, according to the appellant, the OIG Special Agent did not investigate his complaint for fear of retaliation, and OIG closed the case approximately 1 week after the appellant filed the complaint. IAF, Tab 6 at 9, 115. Thus, we find that the appellant has failed to nonfrivolously allege that any agency employee had actual or constructive knowledge of his OIG complaint, and he failed to satisfy the contributing factor criterion regarding his OIG complaint. *Cf. Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 13 (2012) (finding that the appellant made a nonfrivolous allegation that her protected disclosures were a contributing factor in the agency's decision not to select her because the selecting official based his decision, in part, on a recommendation from an employee who knew about some of the appellant's activities and disclosures).

knowledge/timing test, an appellant may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *Salerno*, 123 M.S.P.R. 230, ¶ 13. For the following reasons, we find that the appellant has nonfrivolously alleged that disclosures (1)-(5) were a contributing factor in his 2016 and 2017 nonselections.[8]

Although the appellant has not specified exactly when he made disclosures (1)-(5), it appears that he made them when he occupied the Industrial Hygienist position at the Hines VA Hospital from December 2015 to June 2016. IAF, Tab 6 at 10-11, 26. Moreover, the nonselections occurred in 2016 and 2017. Therefore, the timing component is satisfied. *See Salerno*, 123 M.S.P.R. 230, ¶ 14 (observing that a personnel action taken within approximately 1 to 2 years of the disclosures satisfies the timing component of the knowledge/timing test).

Turning to the knowledge component, we find that the appellant has nonfrivolously alleged that his supervisor had actual knowledge of disclosures (1), (3), and (5). Notably, he alleged that his supervisor became "hot headed" when he began investigating the ongoing mold problem, he emailed her about asbestos in Building 9, and he felt threatened by her demeanor and statements when he reported that he was injured because she did not fix the hazardous waste shed. IAF, Tab 6 at 22, Tab 9 at 12, Tab 10 at 4. We further find that the Human Resources Officer (HRO) had knowledge of disclosure (2) because the appellant

---

[8] A nonselection is a personnel action. *King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 10 (2011). However, we find that the appellant has failed to nonfrivolously allege that his supervisor's Report of Contact, which does not suggest disciplinary or corrective action, is a personnel action under 5 U.S.C. § 2302(a)(2)(A). IAF, Tab 9 at 23. To the extent the appellant argued below that the Report of Contact was part of a pattern of harassment that created a hostile work environment, IAF, Tab 10 at 1, he has failed to prove that he exhausted his administrative remedies regarding such a claim, *supra*, ¶ 15.

asserted that he reacted in an "unforgiving manner" to his report of mold and unsanitary conditions in Building 17 (the Human Resources building). IAF, Tab 9 at 8. Regarding disclosure (4), the appellant alleged that he was "threatened" by the Supervisor for Fire Safety for making such a disclosure to agency leadership. *Id.* at 9.

There are other ways to satisfy contributing factor. For example, an appellant can show that a protected disclosure was a contributing factor in a personnel action by proving that the official taking the action had constructive knowledge of the protected disclosure. *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 15 (2016). An appellant may establish an official's constructive knowledge of a whistleblowing disclosure by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Id.* When the personnel action is a nonselection, evidence concerning who was involved in the selection process, what they knew about the appellant's whistleblowing disclosures, and who may have influenced their decision is exclusively without the agency's possession. *Id.*, ¶ 16. Therefore, at this stage, the appellant can meet his burden of proof without specifically identifying which management officials were responsible for the reprisal. *Id.*

Here, however, the appellant asserted that the HRO, as the most senior Human Resources manager at the facility, was the "gatekeeper" for jobs, was a "key decision maker for accepting or forwarding application[s] to appropriate officials," and had the "authority to recommend [applicants] [and the] responsibility to forward veteran applicants." IAF, Tab 9 at 2, 4, Tab 10 at 6, 8-9. The appellant further alleged that the HRO "deceived" him regarding his veterans' preference rights and wrongfully influenced an acting hiring manager who interviewed him. IAF, Tab 6 at 1-2, Tab 9 at 2, 4, Tab 10 at 9-10. The appellant also alleged that his supervisor used the HRO as a "puppet" to retaliate against him by submitting a false Report of Contact to human resources, which

prevented him from being rehired, and the Supervisor for Fire Safety had "profound influence" on the HRO because he often chaired the Safety Committee. IAF, Tab 6 at 3, 13. Given the nature of the personnel actions at issue, the appellant's allegations are sufficient to satisfy his burden to make nonfrivolous allegations of contributing factor at the jurisdictional stage. *Bradley*, 123 M.S.P.R. 547, ¶¶ 15-17.

Because we find that the appellant exhausted his administrative remedies with OSC and made nonfrivolous allegations that the agency failed to select him for 5 positions in 2016 and 2017 due to disclosures (1)-(5), we remand this IRA appeal for the appellant's requested hearing and a decision on the merits.

On remand, the administrative judge should also address whether the appellant's disclosures were made in the normal course of his duties. Pursuant to 5 U.S.C. § 2302(f)(2), an appellant who makes a disclosure in the normal course of his duties must additionally show that the agency took the action "in reprisal for" his disclosure, and it thereby imposes a slightly higher burden for proving that the disclosure was protected. *Salazar v. Depaartment of Veterans Affairs*, 2022 MSPB 42, ¶ 11. The National Defense Authorization Act for Fiscal Year 2018 amended 5 U.S.C. § 2302(f)(2) to provide that it only applies to employees whose principal job functions are to regularly investigate and disclose wrongdoing, *Salazar*, 2022 MSPB 42, ¶¶ 13-14, and that that amendment is entitled to retroactive effect. *Salazar*, 2022 MSPB 42, ¶¶ 15-21. The Board has recently clarified that the potential applicability of 5 U.S.C.§ 2302(f)(2) is not part of the jurisdictional analysis in an IRA appeal, and should instead be considered at the merits stage. *Williams v. Department of Defense*, 2023 MSPB 23, ¶ 12.

On remand, the appellant must demonstrate by a preponderance of the evidence that his disclosures were protected under 5 U.S.C. § 2302(b)(8) and that they were a contributing factor in a contested personnel action. 5 U.S.C. § 1221(e)(1). If the appellant's principal job function was to regularly investigate

and disclose wrongdoing and he made his disclosures in the normal course of his duties, to establish that his disclosures were protected, the appellant must also prove that the agency had an improper, retaliatory motive for terminating him.

In conducting that analysis, the administrative judge should first determine whether: (1) the appellant's primary job function at the time of the disclosure was to investigate and disclose wrongdoing; and (2) the disclosure was made in the normal course of the appellant's duties. The administrative judge may consider these questions in whichever order is more efficient, and the parties should be provided an opportunity to submit relevant evidence and argument. If either condition is unsatisfied, then § 2302(f)(2) does not apply, and the appellant's disclosures would fall under the generally applicable 5 U.S.C. § 2302(b)(8). *Salazar*, 2022 MSPB 42, ¶ 22. If conditions (1) and (2) are both satisfied, the administrative judge should next determine whether the appellant can meet his additional burden under § 2302(f)(2) by demonstrating that the agency took the contested personnel action "in reprisal" for his disclosures. In doing so, the administrative judge should consider the totality of the evidence. 5 C.F.R. § 1201.4(q) (stating that the record as a whole should be considered when determining whether a party has met the preponderance of the evidence standard); *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012) ("It is error for the MSPB to not evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately.") The determination of whether the agency took personnel actions "in reprisal for" the appellant's whistleblowing disclosures may include direct and circumstantial evidence encompassing the following factors: (1) whether the agency officials responsible for taking the personnel action knew of the disclosures and the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosures were in reprisal for the personnel action; (2) the strength or weakness of the agency's reasons for taking the personnel action; (3) whether the disclosures were personally directed at the

agency officials responsible for taking the action; (4) whether the acting officials had a desire or motive to retaliate against the appellant; and (5) whether the agency took similar personnel actions against similarly situated employees who had not made disclosures. *Williams*, 2023 MSPB 23, ¶ 16.

<u>The appellant's remaining arguments on review do not warrant a different outcome.</u>

In an IRA appeal, the Board lacks the authority to adjudicate the merits of the underlying personnel action; rather, the Board's jurisdiction is limited to adjudicating the whistleblower allegations. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015); *see Marren v. Department of Justice*, 51 M.S.P.R. 632, 638-39 (1991) (stating that Congress did not give the Board general jurisdiction to decide the merits of the underlying personnel action from which an IRA complaint stems except to the extent that they are relevant or material to the appellant's allegations of retaliation for whistleblowing disclosures), *aff'd*, 980 F.2d 745 (Fed. Cir. 1992) (Table), *and modified on other grounds by Robinson v. U.S. Postal Service*, 63 M.S.P.R. 307, 323 n.13 (1994).

On review, the appellant asserts that the agency violated his constitutional rights, committed harmful error and other prohibited personnel practices, discriminated against him, and failed to follow proper recruitment and selection procedures in violation of the Veterans Employment Opportunities Act of 1998 (VEOA).  PFR File, Tab 6 at 5-30.  The Board does not have jurisdiction over these claims in the context of an IRA appeal. *See, e.g., Benton-Flores v. Department of Defense*, 121 M.S.P.R. 428, ¶ 6 n.1 (2014) (finding no jurisdiction over the appellant's claim of harmful procedural error in an IRA appeal); *Smets v. Department of the Navy*, 117 M.S.P.R. 164, ¶ 14 (2011) (finding that the appellant could not bring a claim of disability discrimination in an IRA appeal), *aff'd*, 498 F. App'x 1 (Fed. Cir. 2012); *McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594, ¶ 27 (2011) (finding that the appellant's allegations of constitutional violations could not be heard in his

IRA appeals), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012). On remand, the administrative judge should consider such assertions only to the extent they are relevant or material to the appellant's reprisal claims.[9]

The appellant's arguments concerning equitable tolling and jurisdiction under VEOA and the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), *e.g.*, PFR File, Tab 6 at 7, 20-24, 27, 29, seem to relate to his separate VEOA and USERRA appeals, which are currently pending before the Board in *Hendy v. Department of Veterans Affairs*, MSPB Docket Nos. CH-3330-18-0110-I-1, CH-4324-18-0228-I-1.[10] We deny the appellant's request to join this IRA appeal with his other Board appeals, PFR File, Tab 6 at 7, because doing so would not expedite processing of the cases, 5 C.F.R. § 1201.36(b).

We have reviewed the appellant's evidence and argument concerning a 2018 nonselection for an Industrial Hygienist (GEMS Coordinator) position. PFR File, Tab 6 at 29. As noted above, the appellant did not prove that he exhausted this claim with OSC. Moreover, it appears that this nonselection was the subject of his recently-closed VEOA and USERRA appeals. *Hendy v. Department of Veterans Affairs*, MSPB Docket No. CH-3330-18-0514-I-1, Initial Decision (April 23, 2019); *Hendy v. Department of Veterans Affairs*, MSPB Docket No. CH-4324-18-0541-I-1, Initial Decision (April 23, 2019); *Hendy v. Department of Veterans Affairs*, MSPB Docket Nos. CH-3330-18-0514-I-1, CH-4324-18-0541-I-1, Final Order (March 20, 2024). Therefore, we do not consider such evidence and argument on review.

The appellant argues that the administrative judge is biased because he did not receive proper service of documents in his USERRA appeal and the administrative judge should have held a hearing in his IRA appeal. PFR File,

---

[9] To the extent the appellant believes that any of his supplemental documentation is relevant to the merits of his reprisal claims, he may resubmit such documentation on remand.

[10] The Board will issue separate orders that address the issues raised in the appellant's other appeals.

Tab 6 at 24-25. We disagree. An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The appellant's broad allegation of bias is insufficient to rebut the presumption of the administrative judge's honesty and integrity. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980); *see Vaughn v. Department of the Treasury*, 119 M.S.P.R. 605, ¶ 18 (2013) (observing that the Board will not infer bias based on an administrative judge's case-related rulings).

Although the appellant contends that the administrative judge did not review all of his motions, he does not specify which motions were not reviewed or explain how his substantive rights have been harmed. PFR File, Tab 6 at 28; *see Karapinka v. Department of Energy*, 6 M.S.P.R. 124, 127 (1981) (finding that an administrative judge's procedural error is of no legal consequence unless it is shown to have adversely affected a party's substantive rights).

Finally, we deny the appellant's request for a stay. PFR File, Tab 6 at 30. A stay request of a personnel action must be filed with the appropriate Board regional or field office, not to the full Board on petition for review. 5 C.F.R. § 1209.8(b).

We have considered the appellant's remaining evidence and argument on review, but none warrant a different outcome.

## ORDER

Because we find that the appellant exhausted his administrative remedies with OSC and made nonfrivolous allegations that disclosures (1)-(5) were a contributing factor in the agency's decision not to select him for 5 positions in 2016 and 2017, we vacate the initial decision and remand this case to the Central

Regional Office for a hearing and further adjudication in accordance with this Remand Order.

FOR THE BOARD:

_Gina K. Grippando_
_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.